**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
─────────────────────────────────────

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

                         **v.**          **09-CR-381A(Sr)**

**ISAIAH GLOVER,**

        **Defendant.**

─────────────────────────────────────


## DECISION AND ORDER

        This case was referred to the undersigned by the Hon. Richard J. Arcara, in accordance with 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon dispositive motions.  Dkt. ##2 and 29.


## PRELIMINARY STATEMENT

        Presently pending is the defendant's motion for reconsideration of this Court's prior Decision and Order (Dkt. #20) denying defendant's request for a *Franks* hearing and to suppress evidence.  Dkt. #26.  More specifically, the defendant argues that "the Defense believes that there is enough new information to renew its request for the suppression of evidence due to lack of probable cause and/or conduct an evidentiary hearing."  Dkt. #26, p.2.  Alternatively, the defendant argues that the portions of the transcript of the proceedings before New York State Supreme Court Judge Timothy Drury that have been redacted or are inaudible would, if made available to the defendant, "overcome the burden of providing enough evidence to be entitled to a Suppression Hearing."  *Id*.  Accordingly, the defendant requests that the Court issue

an Order directing the government to disclose to the defendant the entire audio recording and un-redacted transcript. The government has filed its response to defendant's motion for reconsideration (Dkt. #30) and oral argument was held on August 11, 2010.

## **FACTS**[1]

On July 15, 2009, Buffalo Police Department Detective Richard Wagstaff presented a confidential informant to New York State Supreme Court Justice Timothy Drury. Dkt. #14, p.1. The confidential informant was fully identified to Judge Drury, placed under oath and questioned concerning, *inter alia*, 52 West Balcom Street, Buffalo, New York and the defendant, Isaiah Glover. *Id*. Copies of the Search Warrant Application and the Search Warrant issued by Judge Drury were attached to the Government's Response. *See* Dkt. ##14-2 and 14-3. Based on its careful review of the un-redacted transcript and audio tape of the July 15, 2009 proceedings before Judge Drury, the Court notes that the confidential informant provided Judge Drury with information about three additional locations and further that the officers applied for three additional search warrants in addition to the search warrant for 52 West Balcom Street, Buffalo, New York. In support of the Application for the Search Warrant for 52 West Balcom Street, Detective Wagstaff submitted a sworn affidavit and was present when the confidential informant was questioned by Judge Drury. Dkt. #14, p.2; Dkt. #14-2. "Based upon the sworn affidavit of Detective Wagstaff and the sworn testimony

---

[1] The facts set forth below are taken from the defendant's omnibus motion (Dkt. #8) and the government's response to the defendant's omnibus motion (Dkt. #14).

of the CI, Judge Drury signed a search warrant authorizing the search of 52 West Balcom, Buffalo, New York (single house), as well as the person of Isaiah Glover for crack cocaine, handgun [sic], ammunition and magazines." Dkt. #14, p.2; *see also* Dkt. #14-3.

On July 21, 2009, Buffalo Police Department officers and New York State Police officers executed the search warrant issued by Judge Drury at the defendant's residence located at 52 West Balcom Street, Buffalo, New York. Dkt. #14, p.2. During the execution of the search warrant the following items were recovered: mail in the name of the defendant; pieces of identification in the name of the defendant; personal papers; photographs; a scale; over one hundred individually wrapped baggies of crack cocaine; marijuana; a .357 caliber handgun loaded with .38 caliber ammunition; boxes of .357 and .38 caliber ammunition; a Nike shoe box; a backpack which contained the handgun and ammunition; and a Timberland boot with a large amount of crack cocaine stuffed inside. *Id*. During the execution of the search warrant, the defendant's mother, Wanda Battle, arrived at her home at 52 West Balcom Street and confirmed that Isaiah Glover also lived there with her and further, that the recovered items did not belong to her. *Id*. at p.3. Thereafter, on December 3, 2009, a Federal Grand Jury sitting in the Western District of New York returned a six-count Indictment charging the defendant with, *inter alia*, possession and possession with the intent to distribute a mixture containing cocaine base, possession with the intent to distribute marijuana, possession of a .357 Magnum revolver and possession of ammunition, all items recovered during the July 21, 2009 execution of the above-described search warrant. Dkt. #1.

At the time of the execution of the above-described search warrant, the defendant was serving a term of federal supervised release following his release from the Bureau of Prisons relating to a 2004 conviction for possession with the intent to distribute cocaine base. In addition to the six-count Indictment returned by a Federal Grand Jury in December 2009, the defendant also faced a Petition for Offender Under Supervision in connection with multiple violations of the term of his supervised release associated with his 2004 conviction. Specifically, the defendant was charged with thirteen violations of the terms of his supervised release. On January 12, 2010, after a supervised release violation hearing, United States District Judge Richard J. Arcara found the defendant guilty by a preponderance of evidence of all thirteen charges in the violation petition. The thirteen charges all related to the items seized on July 21, 2009 from 52 West Balcom Street and the criminal charges that were subsequently filed in New York State Court, including possession of controlled substances, possession of a weapon and possession of ammunition. On March 31, 2010, Judge Arcara revoked the defendant's term of supervised release and sentenced the defendant to a term of imprisonment of 24 months in the custody of the Bureau of Prisons for the supervised release violations.

## PROCEDURAL BACKGROUND

The defendant, Isaiah Glover, is charged in a six-count Indictment with having violated Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B) (Count 1); Title 21, United States Code, Section 844(a) (Count 2); Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(D) (Count 3); Title 18, United States

Code, Section 924(c)(1) (Count 4); and Title 18, United States Code, Sections 922(g)(1) and 924(a)(2) (Count 5). Dkt. #1. The defendant also faces a forfeiture count (Count 6) pursuant to Title 18, United States Code, Sections 924(d)(1) and 3665, and Title 28, United States Code, Section 2461(c). Dkt. #1.

On February 9, 2010, the defendant filed an omnibus motion for discovery, a motion for a *Franks* hearing and a motion to suppress evidence. Dkt. #8. With respect to the defendant's omnibus motion for discovery, on April 13, 2010, this Court issued its Decision and Order granting in part and denying in part defendant's motion for discovery. Dkt. #19. In his motion for a *Franks* hearing and to suppress evidence, the defendant claimed that Detective Wagstaff's affidavit submitted in support of the search warrant application for 52 West Balcom contained false, material information upon which Judge Drury relied in issuing the search warrant, *to wit*: that the information in Detective Wagstaff's affidavit was based on personal knowledge. The defendant then argued that during the subsequent supervised release hearing described above, Detective Wagstaff testified "that he did not have any personal knowledge whatsoever to verify anything the informant asserted. He went on to testify that he did nothing to investigate any of the allegations of the informant." Dkt. #8, p.4. Therefore, the defendant concluded that it would have been impossible for Detective Wagstaff to have personal knowledge of any of the information supplied by the confidential informant. *Id*. In addition, the defendant further argued that Detective Wagstaff testified that he had never had any contact with this informant before and had done nothing to establish the confidential informant's reliability. *Id*. Based on the

-5-

foregoing, the defendant asserted that the following statement in paragraph 2 of Detective Wagstaff's affidavit was also false, *to wit*: "2. I have information based upon statements made to me by a reliable informant (insert brief summary of fact to be testified to by informant and police applicant in camera[)]." Dkt. #14-2. Indeed, the defendant argued that,

> [i]n the warrant application, Officer [sic] Richard Wagstaff stated that his information was based on statements made to him by a 'reliable informant.' That statement was untrue. This informant had never provided information to this officer in the past. The officer did nothing to verify the reliability of this informant; no controlled buys, no surveillance, no check on the owner of the house, no question of neighbors, no record check on the owner, no anything.

Dkt. #8, pp.5-6. In addition to his request for a *Franks* hearing based on the allegedly false information described above, the defendant also sought the suppression of all evidence seized pursuant to the search warrant issued by Judge Drury. Moreover, the defendant requested that this Court issue an Order directing the government to turn over any notes or transcripts of the *in camera* proceeding before Judge Drury. The defendant further reserved the right to supplement his motion to suppress once the transcripts and/or notes were disclosed based on lack of probable cause.

In its response, the government argued that contrary to the defendant's conclusory allegations, Detective Wagstaff's affidavit did not contain any language pertaining to how long he knew the confidential informant. Instead, the government explained,

> the basis for Detective Wagstaff's conclusion regarding the reliability of the informant was fully described on page 1,

paragraph 2 of the search warrant application wherein the detective stated:

> CI has purchased crack cocaine from [sic] above location between 7/5-7/15/2009 on several occasions. CI has dealt with crack cocaine over five years. CI is familiar with the way crack cocaine looks like [sic], its affect on people, it's [sic] smell and the way it's [sic] packaged for sale.

> Clearly, there were not any 'false statements' by the detective. Based upon his interview with the informant, Detective Wagstaff merely assessed the information provided by the CI and the CI's statements 'were believed or appropriately accepted by the affiant as true' before they were included in the search warrant affidavit.

Dkt. #14, pp.7-8. In addition to the foregoing, the government asserted that subsequent to the preparation of the search warrant application, the confidential informant appeared *in camera* for examination by Judge Drury. Judge Drury placed the confidential informant under oath and examined the confidential informant regarding the subject of the proposed search warrant. Thereafter, the government concluded, "[a]fter conducting his examination, Judge Drury was satisfied with both the reliability of the CI and that probable cause existed for the issuance of the search warrant," Dkt. #14, p.8.

On April 13, 2010, this Court issued its Decision and Order denying defendant's request for a *Franks* hearing. Dkt. #20. In its Decision and Order this Court stated,

> [h]ere, assuming *arguendo*, that the statements in Detective Wagstaff's affidavit were false and misleading, and under *Salameh*, those statements are set aside, this Court finds that there was sufficient basis for Judge Drury to find probable cause to support the issuance of the search

warrant. As detailed above, the confidential informant appeared before Judge Drury, Judge Drury questioned the confidential informant under oath and therefore Judge Drury was able to make his own, independent determination as to the reliability of the information supplied by the confidential informant. Thus, the remaining portions of Detective Wagstaff's affidavit support a finding of probable cause. Based on the foregoing, defendant's request for a *Franks* hearing is denied. In addition to his request for a Franks hearing, the defendant seeks the suppression of all the evidence seized pursuant to the search warrant. Because the sole basis for the suppression of the seized evidence is the assertion that the search warrant was issued based on the intentionally false and misleading information supplied by Detective Wagstaff and further, because that issue has been resolved as aforesaid, there is nothing in the record before this Court to support the holding of a suppression hearing or to warrant the suppression of the seized evidence.

Dkt. #20, p.9.


In addition to his request for a Franks hearing and to suppress evidence, the defendant sought an Order from this Court directing the government to turn over any notes or transcripts of the *in camera* proceeding that took place between the confidential informant and Judge Drury. This Court granted the defendant's request stating,

[w]hereas, in connection with the *in camera* proceeding, the confidential informant responded, under oath, to questions posed by Judge Drury and provided information in support of the application for the above-referenced search warrant and whereas Judge Drury may have made an audio tape recording, a transcript and/or personal hand written notes concerning the *in camera* proceeding, the government is hereby directed to provide the defendant with a copy of any such audio tape recording, transcript or hand written notes,

> after redacting any personally identifying information of the
> confidential informant.

Dkt. #20, p.10.


      Following this Court's Decision and Order on defendant's omnibus motion for discovery (Dkt. #19) and Decision and Order on defendant's motion for a *Franks* hearing and to suppress evidence (Dkt. #20), the parties appeared before United States District Judge Richard J. Arcara on May 7, 2010 to set a trial date.  At that time, the defendant requested that the government comply with his request for the notes and/or transcripts of the *in camera* proceedings before Judge Drury.  Judge Arcara scheduled the matter for a further meeting to set a trial date on June 21, 2010.  At that time, the defendant advised Judge Arcara that he would be filing a motion to compel the disclosure of the notes and/or transcripts of the proceedings before Judge Drury.  At that time, Judge Arcara referred the matter back to the undersigned for further pretrial proceedings and scheduled the matter for another status conference on July 21, 2010. Thereafter, on June 30, 2010, the defendant filed the instant motion for reconsideration of this Court's prior Decision and Order denying his request for a *Franks* hearing and to suppress evidence and for an Order directing the government to disclose the audio recording and the un-redacted transcript.  Dkt. #26.


      As discussed above, in the instant motion, the defendant asserts that there is sufficient "new information" to renew his request for suppression of evidence based upon a lack of probable cause.  In addition, the defendant contends that the

information redacted from the transcript of the *in camera* proceedings before Judge Drury and those portions of the transcript that are inaudible would provide enough evidence so as to entitle the defendant to a suppression hearing or in the alternative, an Order directing that the government disclose the entire audio recording of the proceedings and the un-redacted transcript.  Each of the defendant's assertions with respect to the accuracy of the transcript and/or the audibility of the audio recording, as well as his dissatisfaction with Judge Drury's questioning of the confidential informant will be addressed below.

## DISCUSSION AND ANALYSIS

### Request for a *Franks* Hearing

In the instant motion to reconsider, the defendant simply states that his request for a *Franks* hearing was previously addressed in his earlier motion and will not be repeated for the sake of brevity.  Dkt. #26, ¶ 9.  The Court interprets this statement to mean that the defendant is relying principally on his prior submission and is not offering anything new in support of his request for a *Franks* hearing.

As this Court previously held, the defendant has failed to make the necessary showing to require a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).  In *Franks v. Delaware*, the United States Supreme Court set forth the following standards for challenging an affidavit supporting a search warrant:

> To mandate an evidentiary hearing, the challenger's attack
> must be more than conclusory and must be supported by

more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. . . . Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.

438 U.S. 154, 171-72 (1978) (footnote omitted).

Stated another way, to require a *Franks* hearing, a defendant must make a substantial preliminary showing that, (1) the warrant affidavit contains a false statement, (2) the allegedly false statement was made knowingly and intentionally or with reckless disregard for the truth, and (3) the allegedly false statement was necessary for a finding of probable cause. *United States v. Salameh*, 152 F.3d 88, 113 (2d Cir. 1998), *cert. denied sub nom. Abouhalima v. United States*, 525 U.S. 1112 (1999); *United States v. Levasseur*, 816 F.2d 37, 43 (2d Cir. 1987), *cert. denied sub nom. Laaman v. United States*, 507 U.S. 954 (1993); *United States v. Longo*, 70 F.Supp.2d 225, 254 (W.D.N.Y. 1999).

To suppress evidence obtained pursuant to an affidavit containing erroneous information, the defendant must show that: (1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the [issuing] judge's probable cause finding.

*United States v. Canfield*, 212 F.3d 713, 717-18 (2d Cir. 2000). Accordingly, "[i]f, after

setting aside the allegedly misleading statements or omissions, the affidavit,

nonetheless, presents sufficient information to support a finding of probable cause, the

district court need not conduct a *Franks* hearing." *United States v. Salameh*, 152 F.3d

88, 113 (2d Cir. 1998), *cert. denied sub nom. Abouhalima v. United States*, 525 U.S.

1112 (1999).


Because the defendant has offered nothing in addition to what was

previously before this Court, this Court reiterates its prior decision denying defendant's

request for a *Franks* hearing. In its April 13, 2010 Decision and Order this Court held,

> [h]ere, assuming, *arguendo*, that the statements in Detective
> Wagstaff's affidavit were false and misleading, and under
> *Salameh*, those statements are set aside, this Court finds
> that there was a sufficient basis for Judge Drury to find
> probable cause to support the issuance of the search
> warrant. As detailed above, the confidential informant
> appeared before Judge Drury, Judge Drury questioned the
> confidential informant under oath and therefore, Judge Drury
> was able to make his own, independent determination as to
> the reliability of the information supplied by the confidential
> informant. Thus, the remaining portions of Detective
> Wagstaff's affidavit support a finding of probable cause.
> Based on the foregoing, defendant's request for a *Franks*
> hearing is denied.

Dkt. #20, p.9. For the foregoing reasons, defendant's motion for reconsideration of this

Court's denial of the request for a *Franks* hearing is denied.

**Review of State Search Warrant**

The primary focus of the instant motion to reconsider is the defendant's argument that the warrant to search 52 West Balcom Street, Buffalo, New York was not supported by probable cause. More specifically, the defendant states that, "after examining the redacted Confidential Informant (CI) transcript Judge Drury did not have a sufficient basis for finding probable cause to support the issuance of the search warrant, was rubber stamping what the police wanted and was not acting as a neutral and detached Magistrate." Dkt. #26, ¶ 10.

**_In Camera_ Proceedings Before Judge Drury**

As discussed briefly above, the July 15, 2009 _in camera_ proceedings before Judge Drury related to four separate applications for search warrants to search for separate locations. The only testimony given by the confidential informant that related to the defendant herein related to the application for a warrant to search the defendant's residence located at 52 West Balcom Street, Buffalo, New York. At the outset of the _in camera_ proceedings and on occasion later in the proceedings, Judge Drury asked the confidential informant some general background questions concerning the confidential informant's identity, why the confidential informant was cooperating with the police, and how long the confidential informant had been selling or using cocaine and crack. Other than those general background questions, Judge Drury reviewed each search warrant application separately and questioned the confidential informant about each separate location and who resided at each separate location. Of the four

search warrant applications presented to Judge Drury on July 15, 2009, the defendant's residence, 52 West Balcom Street, Buffalo, New York was the third search warrant application discussed.

Based on the foregoing, this Court's review of the *in camera* proceedings before Judge Drury and its reconsideration of its prior Decision and Order will be confined to only those portions of the *in camera* proceedings that relate to the background information about the confidential informant and the testimony relating to 52 West Balcom Street, Buffalo, New York.

## Judge Drury's Questioning of the Confidential Informant

As a threshold matter, the defendant challenges the manner in which Judge Drury posed his questions to the confidential informant. More specifically, the defendant claims that the examples of the leading questions posed by Judge Drury and the simple answers supplied by the confidential informant recited in his moving papers "clearly indicate that Judge Drury did not have a substantial basis for the finding of probable cause and [Judge Drury] is not neutral or detached." Dkt. #26, ¶ 20. The defendant further claims,

> there is also concern as to what is not asked by Judge Drury that clearly calls in to question the 'substantial basis' and the notion that he is acting as a neutral and detached magistrate or testing the veracity and basis of knowledge of the CI. The interview by Judge Drury concerning Isaiah Glover is transcribed in a mere 3½ pages. The line questioning

should look like cross-examination, not the nose-leading direct that is supplied.

Dkt. #26, ¶¶ 21-22.

Section 690.40 of New York's Criminal Procedure Law provides that,

In determining an application for a search warrant, the court may examine, under oath, any person whom it believes may possess pertinent information. Any such examination must be either recorded or summarized on the record by the court.

The purpose of the requirement that the testimony procured orally be recorded or summarized is to ensure the regularity of the application process and to preserve for review the grounds upon which the search warrant is issued. *People v. Taylor*, 73 N.Y.2d 683, 689 (1989). Where evidence secured from a state search warrant is employed in a federal prosecution, however, review of the warrant is concerned solely with the requirements of the Fourth Amendment. *United States v. Smith*, 9 F.3d 1007, 1014 (2d Cir. 1993); *see Preston v. United States*, 376 U.S. 364 (1964) ("The question whether evidence obtained by state officers and used against a defendant in a federal trial was obtained by unreasonable search and seizure is to be judged as if the search and seizure had been made by federal officers.").

As the Court of Appeals for the Second Circuit stated:

A plaintiff who argues that a warrant was issued on less than probable cause faces a heavy burden. "[W]here [the] circumstances are detailed, where reason for crediting the

-15-

source of the information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner. . . .  [T]he resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *United States v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965).  In particular, where the officer requesting the search warrant relies on an informant, the magistrate's role is to examine the totality of the circumstances and to

> make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.  And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed.  *Illinois v. Gates,* 462 U.S. 213, 238-39, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983) (quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)); *see United States v. Feliz-Cordero*, 859 F.2d 250, 252-53 (2d Cir. 1988).

In determining whether probable cause exists, the magistrate is required to assess whether the information adduced in the application appears to be current, *i.e.,* true at the time of the application, or whether instead it has become stale.

> [T]he principal factors in assessing whether or not the supporting facts have become stale are the age of those facts and the nature of the conduct alleged to have violated the law. Where the supporting affidavits present a picture of continuing conduct or an ongoing activity, as contrasted with isolated instances

> of illegal acts, the passage of time between the last described act and the presentation of the application becomes less significant. *United States v. Martino*, 664 F.2d 860, 867 (2d Cir. 1981), *cert. denied*, 458 U.S. 1110 (1982).

*Rivera v. United States*, 928 F.2d 592, 602 (2d Cir. 1991).


     As has been clearly articulated by the Court of Appeals for the Second Circuit, the role of a reviewing court is "simply to ensure that the magistrate had a substantial basis for . . . conclud[ing]" that probable cause existed and not as the defendant would have this Court believe, to scrutinize the form of the questions posed by the issuing judge. Here, the defendant objects to what he characterizes as leading questions posed by Judge Drury and on that basis alone, concludes that Judge Drury did not have substantial basis for the finding of probable cause. As discussed above, Second Circuit precedent clearly establishes the role of the judge in examining the totality of the circumstances and further, what the judge is required to assess in determining whether probable cause exists. Notably, Second Circuit precedent does not mandate that judges follow a script in questioning a confidential informant, rather, judges must make a practical, common sense decision, given all the circumstances. Equally well-established by Second Circuit precedent is the role of the reviewing court. Based on the clearly delineated role of a reviewing court, this Court declines to second guess Judge Drury's evaluation of the affidavit and testimony of the confidential informant, especially Judge Drury's method of questioning the confidential informant and Judge Drury's finding of probable cause.

## <u>Alleged Inconsistencies/Inaccuracies in Confidential Informant's Testimony</u>

In the instant motion and again during oral argument, the defendant claims that the confidential informant provided inconsistent responses to Judge Drury's questions concerning the length of time the confidential informant had been selling/using drugs. Moreover, the defendant argues that the confidential informant's responses were also inconsistent with the information contained in Detective Wagstaff's affidavit. Specifically, the defendant argues,

> When Judge Drury is questioning the CI about how long he has been "selling or using cocaine" the CI states, "About fifteen years". When questioned again, "You been selling crack for a while?", the CI states, "for ten years." In the warrant application, on page 1, paragraph 2, Officer Wagstaff writes that the "CI has dealt with crack cocaine over five years." Judge Drury's lack of catching wrongful rote information shows that the Judge is merely rubber stamping a warrant and is not analyzing the truthfulness, veracity or basis of knowledge of the CI. Judge Drury is either relying upon the Officers to vouch for the CI's information to be correct and is not paying attention or simply does not care to test the truthfulness, veracity or basis of knowledge of the CI. Regardless, it is a clear showing of Judge Drury lacking neutrality or detachment.

Dkt. #26, ¶¶ 12-13.

As noted above, the Court has carefully reviewed the un-redacted transcript, as well as the audio recording of the July 15, 2009 *in camera* proceedings before Judge Drury. Based on this careful review, this Court concludes that the confidential informant's responses to Judge Drury's questions concerning selling/using

cocaine and selling/using crack were not inconsistent.  Moreover, the statement in

Detective Wagstaff's affidavit was not inconsistent with the confidential informant's

other responses.  Below are the excerpts from the transcript of the July 15, 2009 *in

camera* proceedings before Judge Drury.

> JD (Judge Drury):  Alright.  Have you been awh, selling or
> using cocaine for a period of time?
>
> CI:  Yes sir.
>
> JD:  How long?
>
> CI:  About fifteen years.

Dkt. #26-2, p.6

> JD:  You been selling crack for a while?
>
> CI:  For ten years.

Dkt. #26-2, p.14.  In his affidavit in support of the search warrant application, Detective

Wagstaff stated, "CI has dealt with crack cocaine for over five years."  Dkt. #14-2, p.2.

It is important to note that the transcript establishes that the confidential informant

purchased crack from Isaiah Glover at 52 West Balcom Street, Buffalo, New York.

Although the confidential informant may have purchased cocaine from others at other

locations discussed in the *in camera* proceedings, there is no suggestion that the

confidential informant had purchased cocaine from Isaiah Glover at 52 West Balcom

Street, Buffalo, New York.  It is equally important to note that cocaine and crack are two

different controlled substances as exemplified by Congress' decision to treat the two

controlled substances in dramatically different fashion.  Accordingly, the fact that the

confidential informant may have been selling/using cocaine for fifteen years is not

inconsistent with the fact that the confidential informant may have been selling/using

crack for ten years.  For the same reason, Detective Wagstaff's statement in his

affidavit that the confidential informant had "dealt with crack cocaine for over five years"

is accurate in light of the confidential informant's statement that he had been

selling/using crack for ten years - ten years is in fact "over five years."  Based on the

foregoing, this Court disagrees with the defendant and finds that the statements by the

confidential informant concerning the length of time he had been selling/using cocaine

and crack are not inconsistent or inaccurate and in fact, the confidential informant's

statements support Judge Drury's ultimate finding of probable cause.


### Confidential Informant's Reasons for Assisting Police

In the instant motion, the defendant argues that there were conversations

between the confidential informant and Judge Drury "off the record" that were not

recorded.  Dkt. #26, ¶ 5.  In support of this argument, the defendant states,

> On page 2, Judge Drury states that the Defendant was
> caught with an ounce of crack.  'Okay. Do you understand
> that (inaudible) the ounce, your punishment for an ounce is
> that if you lie here, you might you could get seven years in
> jail?'  No where in the redacted, transcribed testimony does
> anyone inform this to Judge Drury that the CI was caught
> with an ounce of crack and it is obvious that he got this from
> them talking off the record.  This shows that Judge Drury
> was not acting as a neutral and detached magistrate and
> was just rubber stamping what the police wanted.

Dkt. #26, ¶¶ 25-26.  Defendant's argument is belied by the confidential informant's

testimony reflected on the audio recording and in the transcript.  Contrary to

defendant's argument, immediately preceding Judge Drury's statement concerning the punishment the confidential informant could face if he lied, is the confidential informant's statement, as transcribed, "I got caught at a house with crack cocaine."

In addition to the foregoing, later in his motion and also during oral argument the defendant presents a different argument stating that the defendant was not caught at a house with crack cocaine, rather, according to the testimony at the supervised release violation hearing, the defendant was caught with an ounce of crack following a vehicle and traffic stop. Based on the foregoing, the defendant argued that the confidential informant lied to Judge Drury by stating that he had been caught at a house with crack cocaine. A careful review of the audio recording reveals that the transcription of the confidential informant's statement "I got caught at a house with crack cocaine" may be inaccurate. Based on its review of the audio recording, this Court concludes that while the confidential informant's response is difficult to hear, the confidential informant stated, "I got caught with a ounce of crack cocaine." In addition, the latter statement makes more sense when considered in the context of Judge Drury's subsequent comment concerning the confidential informant's punishment and reference to an ounce. Accordingly, this Court concludes that neither of defendant's arguments concerning the confidential informant's reasons for assisting police, *to wit*: off the record conversations between Judge Drury and the confidential informant and the suggestion that the confidential informant had lied about his pending charge, have

any bearing on the confidential informant's credibility or reliability and Judge Drury's ultimate finding of probable cause.

### Audio Recording and Redacted Transcript

The defendant has requested this Court to issue an Order directing the government to disclose an un-redacted version of the transcript, as well as the audio recording. Specifically, the defendant has questioned the necessity for the heavy redactions made to the transcript, as well as questioned the overall accuracy of the transcription process. The Court once again notes that it has carefully reviewed the un-redacted transcript and compared it with the redacted transcript and the audio recording. With respect to the defendant's concerns about the need for the heavily redacted transcript, the Court once again notes that during the July 15, 2009 *in camera* proceedings, Judge Drury was considering four separate applications for search warrants and the confidential informant provided testimony with respect to each location. The only location that is relevant here is the defendant's residence at 52 West Balcom Street, Buffalo, New York. Accordingly, the redaction of any reference to any other location and any other target is entirely appropriate.

In addition to the redaction of any reference to a location or target other than 52 West Balcom Street and the defendant, the only other redacted information is that which would identify the confidential informant. The redaction of such personally identifying information is entirely appropriate and consistent with this Court's prior

Decision and Order filed April 13, 2010. Finally, with respect to the defendant's concern about the redaction of the date when the confidential informant purchased crack from the defendant, the redaction of the date is entirely appropriate in light of the fact that to reveal the date of the purchase would be tantamount to revealing the identity of the confidential informant. For the foregoing reasons, the redactions made to the transcript by the government are entirely appropriate.

The defendant also questions the accuracy of the transcription of the audio recording, specifically those portions identified as inaudible in the transcript. As a threshold matter, the Court notes that there are only four portions of the transcript that relate to 52 West Balcom Street that are characterized as inaudible. Once again, the Court carefully listened to the audio recording and agrees with the government that those portions of the audio recording are indeed inaudible. The Court notes, however, that those inaudible portions are seemingly minor portions of the confidential informant's testimony and even if those portions could be enhanced and transcribed they would not alter the substance of the confidential informant's testimony. The substance and significance of the confidential informant's testimony is clear from the redacted transcript provided to the defendant. Based on the foregoing, this Court finds no legitimate basis to grant the defendant's motion to compel the disclosure of the audio recording and the un-redacted transcript.

For all of the reasons stated above, this Court denies defendant's motion for reconsideration of its earlier Decision and Order denying defendant's motion for a *Franks* hearing and motion to suppress evidence.  In addition, defendant's motion to compel the disclosure of the audio recording and the un-redacted transcript is denied.

Therefore, it is hereby **ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

This Decision and Order be filed with the Clerk of Court.

**ANY OBJECTIONS** to this Decision and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Decision and Order  in accordance with the above statute, Fed. R. Crim. P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance.  *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).  **<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order</u>**.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 58.2, or with the similar provisions of Rule 58.2 (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Judge's refusal to consider the objection.**

DATED:    Buffalo, New York
          September 10, 2010

*s/ H. Kenneth Schroeder, Jr.*
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**